CASE NO. 24-5874

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

———————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

JAQUAN BRIDGES,

*Defendant-Appellant.*

———————————————

On Appeal from the United States District Court
for the Western District of Tennessee,
Western Division

———————————————

## APPELLANT'S PRINCIPAL BRIEF

———————————————

Doris Randle-Holt
Federal Public Defender
Greg Gookin
Assistant Federal Defender
Court-Appointed Attorney for
Jaquan Bridges
200 Jefferson, Suite 200
Memphis, Tennessee 38103
(901) 544-3895

# TABLE OF CONTENTS

**Page**

Table of Authorities…………………………….........................................iii

Statement Regarding
Oral Argument………………………….........................................vii

Statement of Jurisdiction.........................................................................1

Statement of the Issue.............................................................................2

    **Whether 18 U.S.C. § 922(o) is constitutional on its face and as applied to Mr. Bridges.**

Statement of the Case..............................................................................3

    Relevant Facts....................................................................................3

    Relevant Procedural History..............................................................4

    Rulings Presented for Review............................................................8

Summary of Argument............................................................................9

Argument................................................................................................11

Conclusion..............................................................................................28

Certificate of Compliance......................................................................29

Designation of District Court Documents.............................................30

Certificate of Service.............................................................................32

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page**

Atkinson v. Garland,
70 F.4th 1018 (7th Cir. 2023)...................................................................................26

Avitabile v. Beach,
368 F. Supp. 3d 404 (N.D.N.Y. 2019)......................................................................20

Bucklew v. Precythe,
139 S. Ct. 1112 (2019).......................................................................................12-13

Caetano v. Massachusetts,
577 U.S. 411 (2016)......................................................................................... 18, 20

Citizens United v. Fed. Election Comm'n,
558 U.S. 310 (2010)...............................................................................................12

District of Columbia v. Heller,
554 U.S. 570 (2008)......................................................................................... passim

Friedman v. City of Highland Park,
784 F.3d 406 (7th Cir. 2015)..................................................................................21

Hamblen v. United States,
591 F.3d 471 (6th Cir. 2009).........................................................................7, 24-26

Maloney v. Singas,
351 F. Supp. 3d 222 (E.D.N.Y. 2018)......................................................................20

Members of City Council of City of L.A. v. Taxpayers for Vincent,
466 U.S. 789 (1984)...............................................................................................12

Miller v. Gammie,
335 F.3d 889 (9th Cir. 2003)..................................................................................24

Nat'l Rifle Ass'n v. Bondi,
61 F.4th 1317 (11th Cir. 2023)...............................................................................14

N.Y. State Rifle & Pistol, Ass'n, Inc. v. Bruen,
597 U.S. 1 (2022)...............................................................................passim

Silvester v. Becerra,
138 S. Ct. 945 (2018)...................................................................13-14

Spence v. Washington,
418 U.S. 405 (1974)..........................................................................12

State v. Langford,
3 Hawks 381 (NC 1824).....................................................................22

State v. Langford,
10 N.C. 381 (1824).......................................................................22-23

The Northeast Ohio Coalition for the Homeless v. Jon Husted,
831 F.3d 686 (6th Cir. 2016)..............................................................24

Tyler v. Hillsdale Cnty. Sherriff's Dep't,
837 F.3d 678 (6th Cir. 2016)..............................................................26

United States v. Bowers,
594 F.3d 522 (6th Cir. 2010)..............................................................10

United States v. Butler,
549 F.3d 1033 (6th Cir. 2008)............................................................10

United States v. McCallister,
39 F.4th 368 (6th Cir. 2022)..............................................................17

United States v. Miller,
307 U.S. 174 (1939)..........................................................................25

United States v. Morgan, No. 23-10047-JWB,
2024 WL 3890184 (D. Kan. Aug. 21, 2024).................................21-22

United States v. Rahimi,
144 S. Ct. 1889 (2024)..............................................................16-17, 22

United States v. Williams,
113 F.4th 637 (6th Cir. 2024)..........................................................13, 23-24

**Statutory Authority**

U.S. Const. amend. II.........................................................................13

18 U.S.C. § 922(g)(1)........................................................................23

18 U.S.C. § 922(0)......................................................................passim

18 U.S.C. § 922(o)(2)(B)....................................................................21

18 U.S.C. § 3231................................................................................1

26 U.S.C. § 5845..............................................................................17

28 U.S.C. § 1291................................................................................1

Firearm Owner's Protection Act,
Pub. L. No. 99-308, 100 Stat 449 (May 19, 1986)...................................21

**Other Authorities**

Gillian E. Metzger, Facial and As-Applied Challenges
Under the Roberts Court,
36 Fordham Urb. L.J. 773 (2009)...........................................................6

Ltr. from Stephanie M. Boucher, ATF Chief, Disclosure Div.
to Jeffrey E. Folloder (Feb. 24, 2016)[1]...............................................19

U.S. Dep't of Justice, ATF,
Firearms Commerce in the United States:
Annual Statistical Update 2021(2021)[2]...............................................20

---

[1] Available at: https://www.nfatca.org/pubs/MG_Count_FOIA_2016.pdf

[2] Available at: https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download

U.S. Dep't of Justice, ATF,
<u>Firearms Commerce in the United States:</u>
<u>Annual Statistical Update 2020</u> (2021)[3]...........................................................19-20

---
<sup>3</sup> <u>Available at:</u> <u>https://www.atf.gov/file/149886/download</u>

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Comes now, Jaquan Bridges, by and through his appointed counsel, Greg Gookin, pursuant to Sixth Circuit Rule 34(b), and states that oral argument is unnecessary. The facts and legal arguments are adequately presented in the ensuing Brief and record, and the decisional process would not be significantly aided by oral argument at this time.

## <u>STATEMENT OF JURISDICTION</u>

The district court had jurisdiction in this case pursuant to 18 U.S.C. § 3231, as Mr. Bridges was indicted for violation of 18 U.S.C. § 922(o).  (<u>See</u> Indictment (Penalty Copy), R. 2, PageID 2-3.)

The Sixth Circuit Court of Appeals has jurisdiction to hear the present appeal pursuant to 28 U.S.C. § 1291.  Mr. Bridges filed a notice of appeal on September 24, 2024, from the amended judgment in his criminal case docketed that same day.  (<u>See</u> Redacted Am. J., R. 65, PageID 156-161; Notice Appeal, R. 66, PageID 162.)

## <u>STATEMENT OF THE ISSUE</u>

Whether 18 U.S.C. § 922(o) is constitutional on its face and as applied to Mr. Bridges.

## STATEMENT OF THE CASE

### Facts Relevant to Issues Submitted

On December 21, 2021, Shelby County Sheriff deputies responded to an unrelated shooting that occurred on Interstate 240 ("I-240") in Memphis, Tennessee. (See Presentence Investigation Report ("PSR"), R. 49, PageID 97.) As they approached the scene, they saw Mr. Bridges driving a gray Ford Fusion at a slow rate of speed while talking on his cell phone. Id. Moments later, Mr. Bridges sped up and almost struck one of the deputy's vehicles. The deputies activated their emergency equipment in an effort to get Mr. Bridges' attention and perform a traffic stop. Id. Mr. Bridges slowed, rolled down his passenger side window and fired several gunshots. Id. A deputy's vehicle was struck three times with one shot entering the vehicle's side pillar near the deputy's head. Id. at PageID 97-98. The deputy received minor injuries, which were later treated at a local hospital. Id. at PageID 97.

Mr. Bridges then fled the scene in the vehicle. Id. The deputies called for additional assistance and gave chase. Id.

Shortly thereafter, Mr. Bridges exited I-240 and then merged back on at a high rate of speed. Id. During the pursuit, Mr. Bridges struck a woman's Nissan Murano, causing serious damage. Id. He also struck a man's Dodge Ram, again causing serious damage to the vehicle and injuring the man. Id.

3

After a ten-mile pursuit, Mr. Bridges crashed into a concrete barrier and was pinned in on his driver's side. Id. He crawled out of the passenger side of the vehicle at the deputies' commands. Id. During a search of the vehicle, the deputies found a Glock .40 caliber handgun equipped with a machine gun conversion device, commonly referred to as a "switch." Id. at PageID 97-98. It was in plain view near the passenger door. Id. at PageID 97.

After being treated for injuries he sustained during the crash, Mr. Bridges was transported to the Sherriff's General Investigation Bureau, where he waived his rights and agreed to give a statement. Id. When questioned about the shooting, Mr. Bridges explained that while driving on I-240, he noticed someone following him. Id. That person shot at his vehicle, and he returned fire. Id. He shot several rounds at the other vehicle, thereby striking the deputy's vehicle. Id. Mr. Bridges admitted that he also struck two vehicles while fleeing. Id.

The deputies obtained a search warrant for the Ford Fusion. Id. During the search, they located two .40 caliber shell casings, 17 rounds of .40 caliber ammunition, 26.6 grams of marijuana, digital scales , an iPhone, $202.00, and plastic baggies. Id.

**Relevant Procedural History**

As a result of the foregoing, Mr. Bridges was charged with being in possession of a machinegun, in violation of 18 U.S.C. § 922(o). (See Indictment (Penalty Copy,

R. 2, PageID 2-3.)  Mr. Bridges initially filed a motion to dismiss, arguing under N.Y. State Rifle & Pistol, Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022), 18 U.S.C. § 922(o) was unconstitutional, both facially and as applied to him.  (See Def.'s Mot. Dismiss, R. 24, PageID 29-35.)

For his facial challenge, Mr. Bridges assumed himself part of "the people" covered by the second amendment and argued that it was the government's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." Id. at PageID 30 (quoting Bruen, 597 U.S. at 19).  Mr. Bridges averred that the government would be unable to meet this burden with respect to § 922(o).  Id.  He pointed out that starting with District of Columbia v. Heller, 554 U.S. 570 (2008), the Supreme Court had recognized that the Second Amendment guarantees an "individual right to possess and carry weapons in case of confrontation." Id. at PageID 31 (quoting Heller, 554 U.S. at  592).  He noted that he was not prohibited from possessing firearms, and there was no basis to exclude him from "the people" whom the Second Amendment protects.  Id. (quoting Bruen, 597 U.S. at 32).  He averred that Section 922(o) has the specific function and purpose of criminalizing the possession of an entire category of weapons that could prove useful in self-defense "in case of confrontation." Id.  He reasoned that unless that category of weapon is excluded from the "arms" referenced in the Second Amendment, Section 922(o), like the ban

on handgun possession struck down in <u>Heller</u> is facially unconstitutional. <u>Id.</u> (citing <u>Heller</u>, 554 U.S. at 635; Gillian E. Metzger, <u>Facial and As-Applied Challenges Under the Roberts Court</u>, 36 Fordham Urb. L.J. 773, 781-82(2009) (noting "the facial nature of the claim the Court upheld" in <u>Heller</u>)).

He went on to argue that machineguns are not excluded from the "arms" referenced in the Second Amendment. <u>Id.</u> Though the <u>Heller</u> Court had recognized that prohibitions on "dangerous and unusual weapons" was part of the Nation's historical traditions, Mr. Bridges averred it would be misguided to suggest that machineguns fit this category. <u>Id.</u> (citing <u>Heller</u>, 554 U.S. at 627). Mr. Bridges argued that machineguns were in common use in the home prior to 1986, and many could still be found there. <u>Id.</u> at PageID 32. Mr. Bridges observed that the large number of registered machineguns probably was an underestimation because not all that are owned are registered. <u>Id.</u> at PageID 33. Finally, Mr. Bridges averred that this line of argument was bolstered by Justice Thomas' opinion in <u>Bruen</u>. <u>Id.</u> That is, Justice Thomas rejected the argument that firearms in general should be deemed dangerous and unusual weapons, noting that this designation applies only to weapons that are "highly unusual in society at large" and not to weapons that are "in common use today." <u>Id.</u> (quoting <u>Bruen</u>, 597 U.S. at 47 (quoting <u>Heller</u>, 554 U.S. at 627); citing <u>Bruen</u>, 597 U.S. at 47-49 & n.13).

For his as applied challenge, Mr. Bridges recognized that the court might not deem § 922(o) entirely unconstitutional, possibly because of its transfer clause. <u>Id.</u> at PageID 34. Mr. Bridges recognized that the court might find it impermissible to transfer machineguns across state lines and if that was the case, he asked the court to find § 922(o) unconstitutional as to his own possession of the machinegun.

The district court denied Mr. Bridges' motion. (<u>See</u> Order Den. Def.'s Mot Dismiss, R. 36, PageID 48-56.) The court found Mr. Bridges position that it must first consider the plain text of the Second Amendment to be unpersuasive and meritless. <u>Id.</u> at PageID 54-55. It found the same with regard to Mr. Bridges' contention that <u>Heller's</u> discussion of "dangerous and unusual weapons" amounted to dictum. The court ruled that Mr. Bridges' arguments were foreclosed by <u>Heller</u> and former Sixth Circuit precedent in <u>Hamblen v. United States</u>, 591 F.3d 471 (6th Cir. 2009), which held that machineguns were not protected by the Second Amendment. <u>Id.</u> at PageID 55. The court also rejected Mr. Bridges' contention that the plain text of the Second Amendment places the burden on the government to show that possessing a machinegun is consistent with the Nation's historic tradition of firearm regulation. <u>Id.</u> In the court's view, <u>Bruen</u> reaffirmed <u>Heller's</u> text and history approach leaving prior Sixth Circuit precedent interpreting <u>Heller</u> undisturbed, to the extent that those decisions did not rely on a means-end scrutiny

approach in the Second Amendment context.  Id. at PageID 55-56.  Thus, the court found § 922(o) constitutional on its face.  Id. at PageID 56.

As for Mr. Bridges' as-applied challenge, the court found that it was not developed through meaningful argument and so denied that challenge, as well.  Id. at PageID 56.

**Rulings Presented for Review**

Mr. Bridges appeals his sentence in the United States District Court for the Western District of Tennessee before the Honorable John T. Fowlkes.  (See Redacted Am. J., R. 65, PageID 156-161; Notice Appeal, R. 66, PageID 162.)

## SUMMARY OF ARGUMENT

The Second Amendment's plain text protects Mr. Bridges' right to bear arms, as he is among "the people" to whom the Amendment applies. In <u>Heller</u>, the Supreme Court recognized that the text of the Second Amendment and its history conferred an individual right to possess and carry weapons in case of confrontation. But it went no further than that. It did not go any further than resolving the specific Second Amendment claim raised in that case and did not definitively establish a test for evaluating other Second Amendment claims.

It was not until <u>Bruen's</u> "text-and-history standard" was announced that the Court gave definitive guidance on how to analyze Second Amendment claims. Under <u>Bruen's</u> "text and history standard," 18 U.S.C. § 922(o) is unconstitutional, at least as applied to Mr. Bridges. <u>Bruen</u> instructs that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and the government may rebut the presumption of unconstitutionality only by showing that the regulation is consistent with this Nation's historical tradition of firearm regulation.

The government did not and cannot rebut the presumption that Mr. Bridges' prosecution is unconstitutional. Laws regarding regulation of machineguns did not appear until the 1930s and the specific law Mr. Bridges' is accused of violating did not appear until 1986, well after the period <u>Bruen</u> deems relevant. The government

has identified no distinctly similar regulations in the founding era other than pointing to <u>Heller's</u> discussion of the carrying of dangerous and unusual weapons. Machineguns are neither inherently dangerous, nor unusual. They continue to be in many homes for self-protection today.

Finally, <u>Bruen</u> overrules this Court's previous cases upholding § 922(o). <u>Hamblen</u> relied upon <u>Heller's</u> dicta that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." But <u>Bruen</u> held that the "only" way to validate a gun law is through its text and history. <u>Hamblen</u> did not employ the text-and-history test <u>Bruen</u> demands. It is therefore clearly irreconcilable with <u>Bruen's</u> mode of analysis. For all these reasons, Mr. Bridges respectfully requests this Court to reverse and remand with instructions to dismiss.

## ARGUMENT

**ISSUE:** **18 U.S.C. § 922(o) IS UNCONSTITUTIONAL ON ITS FACE AND AS APPLIED TO MR. BRIDGES**

## Standard of Review

This Court reviews the constitutionality of a statute de novo. United States v. Bowers, 594 F.3d 522, 528 (6th Cir. 2010). Because there is no factual dispute, the denial of the motion to dismiss is also reviewed de novo. United States v. Butler, 549 F.3d 1033, 1037 (6th Cir. 2008).

## Argument

The district court erred in denying Mr. Bridges' motion to dismiss because 18 U.S.C. § 922(o) is unconstitutional on its face and as applied to Mr. Bridges.

When the Supreme Court issued its opinion in Bruen in 2022, it upended Second Amendment doctrine, replacing the lower courts' prior interest-balancing approach with an analysis grounded only in constitutional "text and history." Bruen, 597 U.S. at 22. Criminalizing gun possession pursuant to 18 U.S.C. § 922(o) is unconstitutional under Bruen's "text and history" standard. Id. at 39. Bruen instructs that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and the government may rebut the presumption of unconstitutionality only by showing that "the regulation is consistent with this Nation's historical tradition of firearm regulation." Id. at 17.

First, the Second Amendment's "plain text" entitles "the people" to the right to keep and bear arms, and nothing in that text or the Supreme Court's cases holds that machine guns are not "bearable arms." Second, under Bruen's "text and history" standard, the government will be unable to rebut the presumption that § 922(o) is unconstitutional. The United States' "historical tradition of firearm regulation" shows that to qualify as constitutional, laws can prohibit the possession of only "dangerous and unusual weapons." As further set forth below, nearly three quarters of a million people legally own machine guns in the United States—making the possession of such weapons far from unusual. As further explained below, the district court erred in failing to dismiss the indictment against Mr. Bridges.

A.     **Facial v. As-Applied Challenges**

The standard that applies to a facial challenge is whether a law could ever be applied in a valid manner. <u>Members of City Council of City of L.A. v. Taxpayers for Vincent</u>, 466 U.S. 789, 798 (1984). In order to resolve an as-applied challenge, the court determines whether a law with some permissible uses "is nonetheless unconstitutional as applied" to the defendant's conduct. <u>Spence v. Washington</u>, 418 U.S. 405, 414 (1974). The distinction between facial and as-applied challenges "goes to the breadth of the remedy employed by the Court." <u>Citizens United v. Fed. Election Comm'n</u>, 558 U.S. 310, 331 (2010). "[I]t does not speak at all to the substantive rule of law necessary to establish a constitutional violation," and

therefore the same substantive constitutional analysis applies.  Bucklew v. Precythe, 139 S. Ct. 1112, 1127 (2019).  Hence, the district court was incorrect that Mr. Bridges did not develop his as-applied constitutional challenge since the same constitutional analysis applies.

### B.   Second Amendment law has evolved from Heller's initial recognition of the right to bear arms.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  In Heller, the Supreme Court recognized that based on the text of the Second Amendment and history, the amendment "conferred an individual right" "to possess and carry weapons in case of confrontation."  554 U.S. at 576, 582, 592-95.

But in Heller the Supreme Court did not go any further than resolving the specific Second Amendment claim raised in that case.  The Court did not definitively establish a test for evaluating other Second Amendment claims, define the broader contours of the fundamental Second Amendment right, or delimit the outer bounds of that right.  See United States v. Williams, 113 F.4th 637, 643 (6th Cir. 2024) (noting that "Heller made clear that its opinion didn't 'clarify the entire field' of the Second Amendment's history." (citation omitted)).; see also Silvester v. Becerra, 138 S. Ct. 945, 947 (2018) (Thomas, J., dissenting from denial of certiorari)

(acknowledging that the Court "has not definitively resolved the standard for evaluating Second Amendment claims")).

It wasn't until <u>Bruen</u> that the Supreme Court set forth an actual "test" for deciding the constitutionality of all firearm regulations. After first deciding that the courts of appeals had misunderstood and misapplied <u>Heller</u> by embracing means-end scrutiny as having any role in Second Amendment analysis, <u>see</u> <u>Bruen</u>, 597 U.S. 17-22, <u>Bruen</u> set forth the "text and history" approach of <u>Heller</u> by newly bifurcating "text" and "history" into separate steps of an analysis to be used for deciding the constitutionality of all firearm regulations going forward. <u>See</u> <u>Nat'l Rifle Ass'n v. Bondi</u>, 61 F.4th 1317, 1321 (11th Cir. 2023).

At step one of <u>Bruen's</u> Second Amendment test, courts are to consider only whether "the Second Amendment's plain text covers an individual's conduct." 597 U.S. at 17. If it does, <u>Bruen</u> held, "the Constitution presumptively protects that conduct." <u>Id.</u> And, <u>Bruen</u> held, regulating presumptively protected conduct is unconstitutional unless the government, at step two of the analysis, can "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation"—that is, the tradition in existence "when the Bill of Rights was adopted in 1791." <u>Id.</u> at 37.

For the first time, <u>Bruen</u> also articulated specific burdens and rules to govern the historical "tradition" inquiry. First, <u>Bruen</u> made clear that the burden of proof at

step two rests entirely with the government. The government alone must "establish the relevant tradition of regulation." Id. at 34, 58 n.25. If it does not, courts "are not obliged to sift the historical materials for evidence to sustain the [challenged] statute." Id. at 60. Rather, Bruen held, consistent with ordinary "principle[s] of party presentation," courts must "decide a case based on the historical record compiled by the parties." Id. at 26 n.6. If that record yields "uncertainties," the Court dictated, courts should rely on Bruen's "default rules"—the presumption of unconstitutionality at step one and the government's burden at Step Two—"to resolve [those] uncertainties" in favor of the view "more consistent with the Second Amendment's command." Id. In other words, and consistent with the rule of lenity, any possible tie on a Second Amendment challenge goes to the defendant.

Second, whereas in Heller and Bruen, "a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a 'distinctly similar' historical regulation addressing the problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." Bruen, Id. at 26-27.

Third, the government's burden at step two of the Bruen analysis did not stop at identifying a "distinctly similar historical regulation." Rather, the government must show that the challenged regulation "is consistent with the Nation's historical tradition of firearm regulation." Id. at 23. And a "tradition" of regulation requires

15

more than one or two isolated examples. It requires a "widespread" historical practice "broadly prohibiting" the conduct in question. Id. at 36-38. Although Bruen did not establish a clear threshold for determining when a historical practice rises to the level of a "tradition," it did hold that "a single law in a single State" is not enough, and even expressed doubt that regulations of three of the thirteen colonies "could suffice." Id. at 45-50.

After Bruen came United States v. Rahimi, 144 S. Ct. 1889 (2024). Rahimi clarified the threshold for determining when a historical practice rises to the level of a "tradition." Rahimi said that firearm regulations did not need to have a historical "twin" to be valid. Rahimi, 144 S. Ct. at 1898 (quoting Bruen, 597 U.S. at 30). Rather, the inquiry is whether the challenged regulation is consistent with the "principles that underpin our regulatory tradition." Id. While the Court did clarify that the level of generality was higher, Justice Barrett also cautioned in her concurrence that the level must not be so high that it "waters down the right." Id. at 1926 (Barrett, J., concurring).

Applying those principles to the Rahimi defendant, the Court concluded that the statute disarming him was consistent with founding-era regimes that disarmed individuals who posed a threat of safety to others. Id. at 1898. Because the Court found the statute under which Rahimi was convicted was consistent with founding-

era regimes that disarmed individuals who posed a threat of safety to others, the Court found the statute disarming him was constitutional as applied to him.  Id.

**C.    Following the Bruen line of cases, prosecuting Mr. Bridges for possessing a machine gun violates his fundamental right to keep and bear arms under the Second Amendment.**

Section 922(o), which bans machine gun possession, violates the Second Amendment both facially and as applied to Mr. Bridges after Bruen because it criminalizes possession of firearms "in common use" for the purpose of self-defense. Further, the statute is inconsistent with the Nation's historical tradition of firearms restrictions.

Section 922(o) makes it unlawful to possess a machinegun.  It incorporates the definition of machinegun from 26 U.S.C. § 5845, which defines the term in relevant part as follows:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

Id. at § 5845(b).  The Sixth Circuit has acknowledged that conversion devices are machineguns.  See United States v. McCallister, 39 F.4th 368, 372 (6th Cir. 2022).

Heller confirmed that the right the Second Amendment protects is an individual right that includes "us[ing] arms in defense of hearth and home."  Heller,

554 U.S. at 635. The word "arms" in the Second Amendment includes both "armour of defence" and "weapons of offence." <u>Id.</u> at 581. Since the founding of this country, "arms" has included "all firearms" that a person can "bear." <u>Id.</u> ("The 18th-century meaning is no different from the meaning today."). Further, the Second Amendment presumptively protects "all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." <u>Id.</u> at 582; <u>see also</u> <u>Caetano v. Massachusetts</u>, 577 U.S. 411, 412 (2016) (holding stun guns to be protected arms). While the "Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self defense"—including machineguns. <u>Bruen</u>, 597 U.S. at 28. Thus, the plain language of the Second Amendment covers machineguns under the first step of the Bruen test (plain text), meaning that § 922(o) is presumptively unconstitutional.

Turning to the second step of the <u>Bruen</u> test, whether banning machinegun possession is consistent with our country's historical traditions in regulating guns, <u>Bruen</u> makes clear that the focus of the analysis on the type of "arms" at issue lies in whether they are commonly possessed for self-defense:

> [W]e explained there that the Second Amendment protects only the carrying of weapons that are those "in common use at the time," as opposed to those that "are highly unusual in society at large. . . ." Whatever the likelihood that handguns were considered "dangerous and unusual" during the colonial period, they are indisputably in "common use" for self-defense today. They are, in fact, "the quintessential self-

defense weapon.. . ."  Thus, even if these colonial laws prohibited the carrying of handguns because they were considered "dangerous and unusual weapons" in the 1690s, they provide no justification for laws restricting the public carry of weapons that are unquestionably in common use today.

Bruen, 597 U.S. at 47.  Clearly such weapons cannot be used to terrorize people, but banning the possession of commonly used "arms" does not comply with the dictates of the Second Amendment.  Id. (recognizing that laws limiting gun possession in effect at the time of the Second Amendment's passage "merely codified the existing common-law offense of bearing arms to terrorize the people.").  The carrying of weapons to have at the ready for self-defense is at the crux of the historical right to bear arms:

> The historical evidence from antebellum America does demonstrate that the manner of public carry was subject to reasonable regulation. Under the common law, individuals could not carry deadly weapons in a manner likely to terrorize others. Similarly, although surety statutes did not directly restrict public carry, they did provide financial incentives for responsible arms carrying.  Finally, States could lawfully eliminate one kind of public carry—concealed carry—so long as they left open the option to carry openly.").

Id. at 59 (emphasis in original).

Machine guns are unquestionably in common use today for the purposes of self-defense.  As of either 2015 or 2016, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") had just under 500,000 legally registered machine guns in its database.  See Ltr. from Stephanie M. Boucher, ATF Chief, Disclosure Div. to Jeffrey E. Folloder (Feb. 24, 2016).  As of April 2020, there were more than 726,000

machineguns lawfully possessed in the United States and registered with the ATF. U.S. Dep't of Justice, ATF, <u>Firearms Commerce in the United States: Annual Statistical Update 2020</u>, 15–16 (2021). As of May 2021, that number had increased to more than 740,000 machineguns lawfully possessed and registered in the United States. U.S. Dep't of Justice, ATF, <u>Firearms Commerce in the United States: Annual Statistical Update 2021</u>, 15–16 (2021). These figures demonstrate that the legal market for machineguns in the United States has not only remained robust since Congress began regulating their possession in the mid-1930's, but has in fact grown by more than 150% in the three decades since Congress enacted a purported ban on the possession of machine guns.

The number of lawfully possessed machineguns is almost quadruple the number of lawfully possessed stun guns that Justice Alito found sufficient to characterize that weapon as "widely owned and accepted as a legitimate means of self-defense." <u>Caetano</u>, 577 U.S. at 420 (Alito, J., concurring); <u>see also</u> <u>Maloney v. Singas</u>, 351 F. Supp. 3d 222, 237–38 (E.D.N.Y. 2018) (finding evidence that the 64,890 nunchaku sold on the retail market in the United States between 1995 and 2018 were sufficient to show the weapon was "in common use"); <u>Avitabile v. Beach</u>, 368 F. Supp. 3d 404, 411–12 (N.D.N.Y. 2019) (finding evidence that at least 300,000 tasers were owned by private citizens in the United States sufficient to show the weapon was "in common use").

These figures also only include lawfully owned firearms that were grandfathered in from before the passage of § 922(o) in 1986.  See 18 U.S.C. § 922(o)(2)(B); Firearm Owner's Protection Act, Pub. L. No. 99-308, 100 Stat 449, sec. 102 (May 19, 1986).  The actual number of machine guns currently owned by Americans is undoubtedly significantly higher.  Even unlawfully owned machine guns count for the purposes of assessing whether it is in "common use."  Cf. Friedman v. City of Highland Park, 784 F.3d 406, 409 (7th Cir. 2015) (explaining "it would be absurd to say that the reason why a particular weapon can be banned is that there is a statute banning it, so that it isn't commonly owned.").  Thus, as set forth above, section 922(o) is unconstitutional both facially and as applied to Mr. Bridges.

Recently, the federal district court for the district of Kansas came to this same conclusion.  See United States v. Morgan, No. 23-10047-JWB, 2024 WL 3890184 (D. Kan. Aug. 21, 2024).  There, the defendant was charged with possession of two machine guns, one of which was like Mr. Bridges'—it had a conversion switch attached.  Id. at *1.  Finding the defendant's conduct presumptively protected by the Constitution, id. at *2-3, the court turned to Bruen's second step to see if the government could justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.  Id. at *3.

To meet its burden, the government advanced two potential historical analogs. Id. First, the government relied on English common law, asserting that it prohibited riding or going armed with dangerous or usual weapons. Id. (citations omitted). Second, the government cited an 1824 North Carolina Supreme Court case that recognized an offense to arm oneself "with dangerous and unusual weapons, in such a manner as will naturally cause a terror to the people." Id. (quoting State v. Langford, 3 Hawks 381, 383 (NC 1824).) But the court found both examples to be poor analogues for simple possession of a machinegun. Id.

The court noted that the Bruen Court had addressed the government's first example because it had observed that Blackstone's reference to English laws concerning going armed with dangerous and unusual weapons derived from the Statute of Northampton—at least as it was understood during the Middle Ages—but had little bearing on the Second Amendment adopted in 1791." Id. (quoting Bruen, 597 U.S. at 4). It was focused, for the most part, on conduct that evinced an intent to breach the peace, and, in any event, was predicated on the manner in which arms were carried or displayed. Id.

In the government's second example, it asserted that "[i]n the United States, too, courts long ago acknowledged that a man commits 'an offence at common law' when he 'arms himself with dangerous and unusual weapons, in such a manner as will naturally cause a terror to the people.'" Id. at *4. (quoting State v. Langford, 10

N.C. 381, 383 (1824)).  The court once again noted that the Supreme Court had addressed this category of laws at some length in both <u>Bruen</u> and <u>Rahimi</u>, describing them as prohibitions against "going armed" or "affray," the latter word being a term derived from a French word meaning "to terrify."  <u>Id.</u> (quoting <u>Rahimi</u>, 144 S. Ct. at 1900–01; <u>Bruen</u>, 597 U.S. at 46.  The <u>Morgan</u> court explained that the Court understood these laws to combine the elements of going about in a manner to terrorize the public with dangerous and unusual weapons. <u>Id.</u> (citing <u>Rahimi</u>, 144 S. Ct. 1900–01; <u>Bruen</u>, 597 U.S. at 46–50).

Contrasting § 922(o) with these examples, the court found they said nothing about the manner in which machineguns are carried or displayed because the statute criminalizes mere possession of such weapons without regard to how the possessor uses them.  <u>Id.</u>  The court reasoned that "if an individual purchases such a weapon and locks it away in a gun safe in his basement for twenty years without touching it, he is just as guilty of a violation of § 922(o) as one who takes the same weapon out on the public streets and displays it in an aggressive manner."  <u>Id.</u>

Such reasoning applies equally here.  But even if this Court does find such examples relevant, this Court has given recent guidance on how it will determine as applied challenges to 18 U.S.C. § 922(g)(1) in <u>Williams</u>.  There, the Court found that there is an historical tradition of disarming dangerous groups.  <u>See</u> 113 F.4th at 657.  Defendants may prove they are not dangerous through their criminal record.

*Id.* Mr. Bridges had no criminal record prior to the underlying incident. This is why he was able to state in his motion to dismiss that he was not prohibited from possessing firearms in his motion to dismiss. As such, his as-applied challenge should have succeeded.

### D.    **Bruen governs this case.**

Finally, the district court was incorrect that this case is governed by pre-<u>Bruen</u> Sixth Circuit precedent. The court relied upon <u>Hamblen</u>, which held 18 U.S.C. § 922(o) to be constitutional. <u>See</u> 591 F.3d at 474. The problem is that <u>Hamblen</u> relied upon <u>Heller</u>, which employed the means-end analysis rejected in <u>Bruen</u>. <u>Id.</u> Thus, this Court's prior precedent is overruled because it is clearly irreconcilable with <u>Bruen</u>.

"[W]here intervening Supreme Court authority is clearly irreconcilable with [this Court's] prior circuit authority," three-judge panels "should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled." <u>Miller v. Gammie</u>, 335 F.3d 889, 900 (9th Cir. 2003) (en banc), <u>cited in</u>, <u>The Northeast Ohio Coalition for the Homeless v. Jon Husted</u>, 831 F.3d 686, 721 (6th Cir. 2016) ("[T]he intervening Supreme Court authority need not be precisely on point, if the legal reasoning is directly applicable."). To determine whether a prior opinion was overruled, courts look to both "the holdings of higher courts' decisions" and their "mode of analysis."

Id. (simplified). The issues decided in the intervening case "need not be identical in order to be controlling," so long as the case "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." Id.

Here, the district court relied upon Hamblen, because the court wished to apply Heller's dicta, not its abrogated tiered scrutiny test. Hamblen took Heller's admonition—"the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes"—to be sufficient to dispose of the claim that § 922(g)(0) is unconstitutional. Id. It also relied upon the Heller Court's reading of United States v. Miller, 307 U.S. 174 (1939), when it opined that it would be a "startling" interpretation of precedent to suggest that restrictions on machine guns, set forth in the National Firearms Act, might be unconstitutional. Id.

But the district court followed the premise that courts in the Sixth Circuit "are obligated to follow Supreme Court dicta, particularly when there is no substantial reason for disregarding it, such as age or subsequent statements undermining its rationale." (See Order Den. Def.'s Mot. Dismiss, R. 36, PageID 55.) The district court felt there was no substantial reason for disregarding Heller, or its dicta as relied upon in Hamblen. Id.

Hamblen, however, is distinguishable from Mr. Bridges' case for a couple of reasons. First, there is a "substantial reason for disregarding [Heller's dicta]." Bruen

provides a substantial reason to disregard <u>Heller's</u> statement that certain gun laws are presumptively valid. Second, <u>Hamblen</u> is of diminished force given <u>Bruen</u> and the district and circuit court cases that have found that Section 922(o) is unconstitutional, both facially and as applied.

<u>Bruen</u> requires reconsideration <u>Heller's</u> admonition as contained in the dicta. Even the <u>Bruen</u> majority did not recommit to upholding the law-abiding citizens for lawful purposes dicta. Instead, the admonition about felons in possession, the mentally ill, and laws preventing possession of firearms in sensitive places appeared in a concurring opinion. <u>Bruen</u>, 597 U.S. at 81 (Kavanaugh, J., concurring).

As this Court stated in assessing a challenge to Section 922(g)(4), "<u>Heller</u> only established a presumption that such bans were lawful; it did not invite courts onto an analytical off-ramp to avoid constitutional analysis." <u>Tyler v. Hillsdale Cnty. Sherriff's Dep't</u>, 837 F.3d 678, 686 (6th Cir. 2016) (en banc). <u>Hamblen</u> applied <u>Heller's</u> presumption, as did the district court here, to find 18 U.S.C. § 922(o) constitutional instead of the text and history methodology set forth in <u>Bruen</u>. But <u>Bruen</u> leaves no room for doubt: text and history now define the controlling Second Amendment inquiry. As found by the Seventh Circuit, nothing in the decision allows the lower courts to sidestep <u>Bruen</u> based on "presumptively lawful" felon-in-possession laws. <u>See</u> <u>Atkinson v. Garland</u>, 70 F.4th 1018, 1022 (7th Cir. 2023). The lower courts must undertake the text-and-history inquiry the <u>Bruen</u> Court so plainly

announced and expounded upon at great length.  <u>Id.</u>  Under that test, 18 U.S.C.

§ 922(o) violates the Second Amendment.

## **CONCLUSION**

Based on the foregoing, undersigned counsel respectfully requests that this

Honorable Court reverse his conviction and remand for further proceedings.

Respectfully submitted,

*/s/ Greg Gookin*
Greg Gookin
Assistant Federal Defender
200 Jefferson, Suite 200
Memphis, Tennessee 38103
(901) 544-3895

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,
## AND TYPE STYLE REQUIREMENTS

1.     This document complies with [the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    ✓  this document contains **5,750** words, **or**

    □  this brief uses a monospaced typeface and contains _____ lines of text.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

    □  this document has been prepared in a proportionally spaced typeface using Word 2016 in 14-point times new roman type style, **or**

    □  this document has been prepared in a monospaced typeface using _____ with _____.

*/s/ Greg Gookin*
Attorney for Jaquan Bridges
Dated: October 22, 2024

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

   Plaintiff/Appellee,

vs.

JAQUAN BRIDGES,

   Defendant/Appellant.

---

APPELLANT'S DESIGNATION OF
RELEVANT DISTRICT COURT DOCUMENTS

---

  Jaquan Bridges, Appellant, pursuant to Sixth Circuit Rule 30(g), hereby designates the following district court documents:

| DESCRIPTION OF ENTRY | DOCKET ENTRY NO. | PAGE ID# RANGE |
|---|---|---|
| Indictment (Penalty Copy) | 2 | 2-3 |
| Def.'s Mot. Dismiss | 24 | 29-35 |
| Order Den. Def.'s Mot. Dismiss | 36 | 48-56 |
| Redacted J. | 58 | 139-144 |
| Redact Am. J. | 65 | 156-161 |

Respectfully submitted,

*/s/ Greg Gookiin*
Greg Gookin
Assistant Federal Defender
200 Jefferson, Suite 200
Memphis, Tennessee 38103
(901) 544-3895

## CERTIFICATE OF SERVICE

I, Greg Gookin, hereby certify that a copy of the foregoing Brief was forwarded via the electronic filing system to: Eileen Kuo, Assistant United States Attorneys, 167 North Main Street, Suite 800, Memphis, Tennessee, 38103 (eileen.kuo@usdoj.gov).

This, the 22nd day of October 2024.

/s/ Greg Gookin
Greg Gookin
Assistant Federal Defender