No. 24-5874

# United States Court of Appeals
## for the Sixth Circuit

———————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JAQUAN BRIDGES,
*Defendant-Appellant.*

———————

On Appeal from the United States District Court
for the Western District of Tennessee
No. 2:23-cr-20080 (Fowlkes, S.J.)

———————

BRIEF FOR PLAINTIFF-APPELLEE UNITED STATES

———————

For the Appellee:

REAGAN FONDREN
Acting United States Attorney

EILEEN KUO
Assistant United States Attorney
167 N. Main St., Ste. 800
Memphis, Tennessee 38103
(901) 544-4231
Eileen.Kuo@usdoj.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................ 1

TABLE OF AUTHORITIES ...................................................... 3

STATEMENT REGARDING ORAL ARGUMENT ................................. 8

STATEMENT OF JURISDICTION .......................................... 8

ISSUE PRESENTED ................................................................ 9

STATEMENT OF THE CASE .................................................. 9

SUMMARY OF THE ARGUMENT ....................................... 13

ARGUMENT ........................................................................ 14

    I.    Section 922(o) does not violate the Second Amendment on its face..16

        A.    Standard of Review .................................................16

        B.    Statutory background ..............................................17

        C.    Supreme Court authority .........................................18

        D.    Supreme Court and Sixth Circuit precedent foreclose Bridges' constitutional challenge. ........................................20

        E.    Section § 922(o) is constitutional under the *Bruen* test. ...........23

    II.    Bridges' as-applied challenge has been forfeited and lacks merit. ......36

        A.    Standard of review ................................................36

        B.    Bridges has failed to show error, much less plain error, with respect to the application of § 922(o) to him. ..........................37

CONCLUSION ...................................................................... 39

CERTIFICATE OF COMPLIANCE ........................................ 41

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS . 42

CERTIFICATE OF SERVICE................................................................43

<u>TABLE OF AUTHORITIES</u>

Cases

*Bevis v. City of Naperville, Illinois*, 85 F.4th 1175 (7th Cir. 2023)................. 22, 30

*Bianchi v. Brown*, 111 F.4th 438 (4th Cir. 2024) ................................ 22, 25, 34, 35

*Cox v. United States*, No. 11-CR-22, 2023 WL 4203261
  (D. Alaska June 27, 2023) ..............................................................................16

*DeWilde v. Attorney General*, No. 24-CV-84, 2024 WL 4643681
  (D. Wyo. Oct. 16, 2024) ..................................................................................15

*District of Columbia v. Heller*, 554 U.S. 570 128 S. Ct. 2783 (2008) ........... passim

*Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015).......................24

*Hamblen v. United States*, 591 F.3d 471 (6th Cir. 2009) .............................. passim

*Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016) ..................................... 25, 26, 29, 31

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) .......... passim

*New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242
  (2d Cir. 2015)..................................................................................................32

*Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38 (1st Cir. 2024)...............34

*Staples v. United States*, 511 U.S. 600 (1994)................................................ 26, 27

*United States v. Alsenat*, --- F. Supp. 3d ---, No. 0:23-CR-60209, 2024 WL
  2270209 (S.D. Fla. May 20, 2024) .................................................................15

*United States v. Alvarado*, 95 F.4th 1047 (6th Cir. 2024) ................................ 38, 39

*United States v. Bachmann*, No. 8:23-CR-304, 2024 WL 730489
  (M.D. Fla. Feb. 22, 2024) ...............................................................................15

*United States v. Barrow*, No. 1:23-CR-236, 2024 WL 3814041
  (N.D. Ga. Aug. 13, 2024).................................................................................15

*United States v. Berger*, 715 F. Supp. 3d 676 (E.D. Pa. 2024) ................. 15, 30, 34

*United States v. Berríos-Aquino*, No. 22-CR-473, 2024 WL 1468488
  (D.P.R. Apr. 4, 2024).......................................................................................15

*United States v. Blackwell*, 459 F.3d 739 (6th Cir. 2006) .......................................37

*United States v. Brown*, No. 0:23-CR-186, 2024 WL 42419593
  (D.S.C. Sept. 19, 2024) ...................................................................................15

*United States v. Caldwell*, No. 1:24-CR-70, 2024 WL 2784340
  (N.D. Ohio May 30, 2024)...............................................................................15

*United States v. Chan*, No. 22-CR109, 2024 WL 4028019
  (D. Haw. Sept. 3, 2024) ...................................................................................15

*United States v. Cooperman*, No. 22-CR-146, 2023 WL 4762710

(N.D. Ill. July 26, 2023) ...................................................................16

*United States v. Cousar*, No. 23-CR-10004, 2024 WL 1406898
(D. Kan. Apr. 2, 2024) ....................................................................15

*United States v. Delafose*, No. 2:23- CR-185, 2023 WL 7368239
(W.D. La. Nov. 7, 2023) ..................................................................15

*United States v. Dixon*, No. 22-CR140, 2023 WL 2664076 (N.D. Ill. Mar. 28,
2023) .............................................................................................16

*United States v. Elliott*, No. 21-CR-88, 2024 WL 3161879 (E.D. La. June 24,
2024) .............................................................................................15

*United States v. Ferguson*, 868 F.3d 514 (6th Cir. 2017)....................................21

*United States v. Fincher*, 538 F.3d 868 (8th Cir. 2008) ....................................28

*United States v. Fisher*, No. 1:23-CR-45, 2024 WL 589115 (W.D.N.C.
Feb. 13, 2024) ................................................................................15

*United States v. Gore*, 118 F.4th 808 (6th Cir. 2024)....................................16

*United States v. Graham*, 622 F.3d 445 (6th Cir. 2010) ................................. 36, 37

*United States v. Greely*, et al, No. 1:22-cr-00137, E.D. Mich., Jun. 1, 2023 .........31

*United States v. Hart*, No. 23-CR-293, 2024 WL 893335 (D. Minn.
Mar. 1, 2024)..................................................................................15

*United States v. Henry*, 688 F.3d 637 (9th Cir. 2012) ................................. 25, 29, 30

*United States v. Hernandez*, 721 F. Supp. 3d 310 (D. Del. 2024)..........................15

*United States v. Hicks*, No. 23-CR-65, 2024 WL 1840326 (W.D. La.
Apr. 26, 2024) ................................................................................15

*United States v. Jackson*, No. 4:23-CR-62, 2024 WL 1160304
(N.D. Miss. Mar. 18, 2024)...............................................................15

*United States v. Johnson*, No. 24-CR-20083, 2024 WL 4612888
(E.D. Mich. Oct. 29, 2024) ..............................................................15

*United States v. Kelley*, No. 23-CR-267, 2024 WL 264588 (D. Minn.
Jan. 24, 2024)..................................................................................15

*United States v. Kittson*, No. 3:21-CR-75, 2023 WL 5015812 (D. Or.
Aug. 7, 2023) ..................................................................................15

*United States v. Lane*, 689 F. Supp. 3d 232 (E.D. Va. 2023)..............................15

*United States v. Miller*, 307 U.S. 174 (1939) ..................................... 24, 26, 27, 29

*United States v. Mitchell*, --- F. Supp. 3d ---, No. 1:24-CR-9,
2024 WL 2272275 (N.D. Ohio May 20, 2024) ....................................15

*United States v. Morgan*, No. 23-10047, 2024 WL 3890184
(D. Kan. Aug. 21, 2024) ..................................................................16

*United States v. O'Brien*, 560 U.S. 218 (2010) .......................................31

4

*United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame*, 822 F.3d 136 (3d Cir. 2016)................................. 29, 34
*United States v. Price*, 111 F.4th 392 (4th Cir. 2024) .............................27
*United States v. Rahimi*, 602 U.S. 680 (2024)...................................... passim
*United States v. Reed*, 167 F.3d 984 (6th Cir. 1999) ..............................37
*United States v. Saleem*, No. 23-4693, 2024 WL 5084523 (4th Cir. Dec. 12, 2024) ...............................................................27
*United States v. Simien*, 655 F. Supp. 3d 540 (W.D. Tex. 2023) ...........16
*United States v. Smith*, No. 23-CR-28, 2023 WL 6880423 (E.D. Ky. Oct. 18, 2023) .........................................................................15
*United States v. Sturgeon*, No. 23-CR-6, 2023 WL 6961618 (E.D. Ky. Oct. 20, 2023) ............................................................................................15
*United States v. Thompson/Ctr. Arms Co*., 504 U.S. 505 (1992) ............27
*United States v. Williams*, 113 F.4th 637 (6th Cir. 2024)................................. 17, 38
*United States v. Williams*, No. 21-CR-745, 2024 WL 308460 (N.D. Ill. Jan. 26, 2024) ....................................................................................15
*United States v. Wilson*, No. 2:23-CR-20081, 2023 WL 8288989 (W.D. Tenn. Nov. 7, 2023) ...............................................................15
*United States v. Wilson*, No. 4:24-CR-027, 2024 WL 1144251 (N.D. Tex. Mar. 15, 2024) .................................................................15
*United States v. Zaleski*, 489 F. App'x 474 (2d Cir. 2012) ....................29
*United States v. Zannino*, 895 F.2d 1 (1st Cir. 1990) ............................37

Statutes

18 Pa. Cons. Stat. Ann. § 908(a).............................................................28
18 U.S.C. § 3231 ........................................................................................8
18 U.S.C. § 921(a)(23)..............................................................................10
18 U.S.C. § 921(a)(24)..............................................................................17
18 U.S.C. § 922(g)(8)................................................................................33
18 U.S.C. § 922(o) ........................................................................... passim
18 U.S.C. § 922(o)(1)................................................................................17
18 U.S.C. § 922(o)(2)(A)...........................................................................17
18 U.S.C. § 922(o)(2)(B)...........................................................................17
26 U.S.C. § 5845(b) .......................................................................... 10, 17
28 U.S.C. § 1291 ........................................................................................8
720 Ill. Comp. Stat. 5/24-1(a)(7)(i).........................................................28
Alaska Stat. § 11.61.200 ..........................................................................28

Ariz Rev Stat 13-3102......................................................................28
Ark. Code Ann. § 5-73-204............................................................29
Cal. Penal Code § 32625(b)............................................................28
Colo. Rev. Stat. § 18-12-102(1)......................................................28
Conn. Gen. Stat. § 53-202..............................................................29
D.C. Code Ann. § 7-2502.02(a)(2)..................................................28
Del. Code Ann. tit. 11, § 1444(a)....................................................28
Fla. Stat. §§ 790.221......................................................................29
Georgia Code 16-11-122................................................................28
Haw. Rev. Stat. §134-8(a)..............................................................28
Idaho Code Ann. § 18-3302F..........................................................29
Indiana Code 35-47-5-8..................................................................28
Iowa Code §§ 724.1(7)..................................................................28
Kan. Stat. Ann. § 21-6301..............................................................28
La. Rev. Stat. § 1752......................................................................28
Mass. Gen. Laws ch. 140, § 123......................................................28
Md. Code Ann., Crim Law § 4-305.1..............................................29
Me. Stat., 17-A §§ 1051-1052..........................................................28
Mich. Comp. Laws Serv. 750.224e..................................................29
Minn. Stat. § 609.67......................................................................28
Miss. Code § 97-37-39....................................................................29
Mo. Rev. Stat. § 571.020.1..............................................................28
Mont. Code Ann. § 45-8-304..........................................................29
N.C. Gen. Stat. § 14-409(b)............................................................28
N.D. Cent. Code § 62.1-05-01........................................................28
N.J. Stat Ann. § 2C:39-5a..............................................................28
N.Y. Penal Law §§ 265.02(2)..........................................................28
Neb. Rev. Stat. § 28-1203(1)..........................................................28
Nev. Rev. Stat. Ann. § 202.350(1)(b)..............................................28
Ohio Rev. Code § 2923.17..............................................................29
Okla. Stat. Ann. tit. 21, § 1283(A)..................................................29
Or. Rev. Stat. § 166.272..................................................................28
R.I. Gen. Laws § 11-47-8(a)............................................................28
S.C. Code Ann. §§ 16-23-230..........................................................28
S.D. Codified Laws § 22-14-6........................................................28
Tenn. Code Ann. § 39-17-1302........................................................28
Tex. Penal Code § 46.05(a)(2)........................................................28
Utah Code Ann. § 76-10-509.4........................................................29

Va. Code Ann. § 18.2-293.1 ...................................................................29
W. Va. Code § 61-7-9 ...........................................................................28
Wash. Rev. Code Ann. § 9.41.190(1)....................................................28
Wis. Stat. § 941.26(1)(a).......................................................................28
Wyo. Stat. § 23-3-112(a) ......................................................................29

Other Authorities

1 Blackstone's Commentaries 145-146 (1803) .....................................34
132 Cong. Rec. 9600 (1986)..................................................................26
David B. Kopel & Joseph G. S. Greenlee, The History of Bans on Types
    of Arms Before 1900, 50 J. Legis. 223 (2024) ..................................25
H.R. Rep. No. 83-1337 (1954)...............................................................26
H.R. Rep. No. 99-495 (1986).................................................................26
John Berrigan, et al., *The Number and Type of Private Firearms in the
    United States*, Annals of the American Academy of Political and
    Social Science, Vol. 704, Issue 1 (Nov. 2022) .................................32
John Ellis, The Social History of the Machine Gun (1986) ...................25
Joseph Blocher & Eric Ruben, Originalism-by-Analogy and Second
    Amendment Adjudication, 133 Yale L.J. 99 (2023) ..........................34
Robert J. Spitzer, Understanding Gun Law History After *Bruen*: Moving
    Forward by Looking Back, 51 Fordham Urb. L.J. 57 (2023)....................25, 26
S. Rep. No. 73-1444 (1934) .............................................................26, 31
S. Rep. No. 90-1501 (1968) ..................................................................25
The Trace, *How Many Guns are Circulating in the U.S.?*,
    https://www.thetrace.org/2023/03/guns-america-data-atf-total/ .................32, 33
William Rosenau, Book Note, The Origins of the First Modern Weapon,
    TECH. REV., Jan. 1987..................................................................25

Constitutional Provisions

U.S. Const. amend. II............................................................................18

## STATEMENT REGARDING ORAL ARGUMENT

The United States submits that the briefs and record below adequately set forth the facts and legal issues in this appeal. The United States, therefore, does not believe that the decisional process would be significantly aided by oral argument.

## STATEMENT OF JURISDICTION

Defendant-Appellant Jaquan Bridges pled guilty to possessing a machinegun in violation of 18 U.S.C. § 922(o). Amended Judgment, R. 65, PageID 156. The district court had jurisdiction in this case pursuant to 18 U.S.C. § 3231, because the defendant was indicted by a federal grand jury for offenses against the laws of the United States. The amended judgment, entered on September 24, 2024, disposed of all claims and was the final decision of the district court. On the same day, Bridges filed a timely notice of appeal. Notice of Appeal, R. 67, PageID 163. This Court has jurisdiction to consider Bridges' appeal pursuant to 28 U.S.C. § 1291.

## ISSUE PRESENTED

Whether the federal prohibition on machinegun possession under 18 U.S.C. § 922(o) violates the Second Amendment on its face and as applied to Bridges.

## STATEMENT OF THE CASE

I.    Factual Background

On February 1, 2021, Shelby County Sheriff's deputies saw an individual (later identified as Defendant-Appellant Jaquan Bridges) operating a gray Ford Fusion on I-240.  Presentence Investigation Report ("PSR"), R. 49, PageID 97.  He was traveling at a slow rate of speed on the interstate while looking at his cell phone.  *Id.*  A deputy activated his lights to attempt to get Bridges' attention to conduct a traffic stop however, instead of complying, Bridges pulled alongside the deputy's car.  *Id.*  He fired several gunshots at the deputy's vehicle—one bullet entered the side pillar near the deputy's head but was stopped by the door frame. *Id.* at PageID 97, 98.  Another bullet entered the deputy's vehicle toward the rear of the car and exited on the other side through a passenger side rear window.  *Id.* at PageID 98.

After firing the shots, Bridges led deputies on a 10-mile pursuit during which he struck at least two victims' vehicles, causing substantial damage, before

9

crashing into a concrete barrier. *Id*. at PageID 97. Deputies took Bridges into custody and located a Glock 23 .40 caliber handgun with an attached machinegun conversion device on the ground next to Ford Fusion where Bridges exited the vehicle. *Id*. This firearm with attached machinegun conversion device was examined by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), which determined that the firearm was in fact a machinegun as defined by 18 U.S.C. § 921(a)(23) and 26 U.S.C. § 5845(b) and that Bridges did not have a valid registration for the machinegun. *Id*. at PageID 97-98. After waiving his *Miranda* rights, Bridges admitted firing shots on the interstate. *Id*. at PageID 98. He claimed he was shooting at someone else, not the deputy, but later admitted that he knew he shot at a law enforcement officer and a law enforcement vehicle. *Id*.

II. <u>Procedural Background</u>

On April 27, 2023, a federal grand jury in the Western District of Tennessee returned a one-count indictment against Bridges for possessing a machinegun in violation of 18 U.S.C. § 922(o). Indictment, R. 2, PageID 2-3. Bridges filed a motion to dismiss on July 19, 2023, arguing that 18 U.S.C. § 922(o) is facially unconstitutional under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). Defendant's Motion to Dismiss ("Def.'s Motion"), R. 24, PageID 29-35. Bridges argued that the Second Amendment protects his right to possess a

machinegun and that prosecution for violation of 18 U.S.C. § 922(o) violated this Second Amendment right. Bridges argued that machineguns are not "dangerous and unusual" weapons excluded from Second Amendment protection. *Id.* at PageID 31-34). Bridges additionally asserted in a single paragraph that, if the court rejected his facial challenge based "due to the transfer clause of 922(o)," he would challenge the constitutionality of § 922(o) "as applied under the guise of possession." *Id.* at PageID 34.

The government argued in response that the plain text of the Second Amendment does not guarantee a right to possess machineguns. Gov't Response in Opposition ("Gov't Response"), R. 25, PageID 36-41. The government further argued that machineguns are dangerous and unusual weapons and that the ban against them is consistent with this country's historical tradition. *Id.* at PageID 39-40. Bridges also filed a reply in support of his motion. Reply, R. 26, PageID 42-45.

The district court denied Bridges' motion, ruling that the machinegun ban imposed under § 922(o) is facially constitutional and that the plain text of the Second Amendment does not protect ownership of machineguns. Order Denying Def.'s Motion ("Order"), R. 36, PageID 48-56. As to Bridges' as-applied challenge, the district court found that Defendant Bridges did not develop this

11

argument through meaningful analysis, having cited no authority or advanced any arguments, and denied the as-applied challenge. (Order, R. 36, PageID 56).

Subsequently, Bridges pled guilty to the one-count indictment. Minute Entry, R. 33. The parties presented proof at a sentencing hearing on July 23, 2024, and the district court continued the hearing for argument and ruling until September 17, 2024, at which time the district court sentenced Bridges to 108 months of imprisonment and 3 years of supervised release. Minute Entries, R. 51, R. 55; Amended Judgment, R. 65, PageID 157-58. This appeal followed.

The federal prohibition on machinegun possession in 18 U.S.C. § 922(o) complies with the Second Amendment. Binding precedent from this Court and *District of Columbia v. Heller*, 554 U.S. 570 128 S. Ct. 2783 (2008) requires that conclusion. Even in the absence of binding precedent, § 922(o) is constitutional. The Supreme Court has recognized for decades that the Second Amendment does not apply to every firearm. Machineguns are not bearable "arms" within the meaning of the Second Amendment's text. The type of weapon protected is limited by the Founding-era understanding that the right applied to weapons one would expect citizens to use when called for militia service. Machineguns are not such bearable "arms" because they are not typically possessed by law-abiding citizens for lawful purposes. Machineguns were developed primarily for military use, and Congress properly sought to prohibit non-military possession after recognizing that machineguns were typically possessed by lawbreakers in furtherance of unlawful behavior.

The prohibition on machinegun possession also falls comfortably within the historical tradition prohibiting the carrying of dangerous and unusual weapons. Machineguns are widely recognized as dangerous. They are also unusual by any metric: machineguns are relatively few in number, a very small proportion of

firearms owned generally, banned by the vast majority of state jurisdictions, and developed for and primarily used by the military.

*Bruen* casts no doubt on *Heller's* analysis of the issue or this Court's holding that the machinegun prohibition is constitutional. Bridges offers no reason to dispute their obvious dangerousness, nor does he offer any basis to conclude that machineguns are not unusual.

## ARGUMENT

More than two dozen federal courts, including multiple district courts in the Sixth Circuit, have considered the constitutionality of 18 U.S.C. § 922(o) after the

Supreme Court decided *Bruen* and upheld the statute as constitutional.[1]   Although

Bridges cites the single case to have reached a contrary conclusion, *United States*

---

[1] *See United States v. Johnson*, No. 24-CR-20083, 2024 WL 4612888, at *9-14 (E.D. Mich. Oct. 29, 2024); *DeWilde v. Attorney General*, No. 24-CV-84, 2024 WL 4643681, at *5-7 (D. Wyo. Oct. 16, 2024); *United States v. Brown*, No. 0:23-CR-186, 2024 WL 4241959, at *2-3 (D.S.C. Sept. 19, 2024); *United States v. Chan*, No. 22-CR109, 2024 WL 4028019, at *5-6 (D. Haw. Sept. 3, 2024); *United States v. Barrow*, No. 1:23-CR-236, 2024 WL 3814041, at *2 (N.D. Ga. Aug. 13, 2024); *United States v. Elliott*, No. 21-CR-88, 2024 WL 3161879, at *2 (E.D. La. June 24, 2024); *United States v. Caldwell*, No. 1:24-CR-70, 2024 WL 2784340, at *5 (N.D. Ohio May 30, 2024); *United States v. Mitchell*, --- F. Supp. 3d ---, No. 1:24-CR-9, 2024 WL 2272275, at *2-5 (N.D. Ohio May 20, 2024); *United States v. Alsenat*, --- F. Supp. 3d ---, No. 0:23-CR-60209, 2024 WL 2270209, at *2-10 (S.D. Fla. May 20, 2024); *United States v. Hicks*, No. 23-CR-65, 2024 WL 1840326, at *2-5 (W.D. La. Apr. 26, 2024); *United States v. Berríos-Aquino*, No. 22-CR-473, 2024 WL 1468488, at *4-7 (D.P.R. Apr. 4, 2024); *United States v. Cousar*, No. 23-CR-10004, 2024 WL 1406898, at *11-13 (D. Kan. Apr. 2, 2024); *United States v. Jackson*, No. 4:23-CR-62, 2024 WL 1160304, at *11 (N.D. Miss. Mar. 18, 2024); *United States v. Wilson*, No. 4:24-CR-027, 2024 WL 1144251, at *2-3 (N.D. Tex. Mar. 15, 2024); *United States v. Hernandez*, 721 F. Supp. 3d 310, 314-17 (D. Del. 2024); *United States v. Hart*, No. 23-CR-293, 2024 WL 893335, at *3 (D. Minn. Mar. 1, 2024); *United States v. Bachmann*, No. 8:23-CR-304, 2024 WL 730489, at *1-3 (M.D. Fla. Feb. 22, 2024); *United States v. Fisher*, No. 1:23-CR-45, 2024 WL 589115, at *1-3 (W.D.N.C. Feb. 13, 2024); *United States v. Berger*, 715 F. Supp. 3d 676, 680-97 (E.D. Pa. 2024); *United States v. Williams*, No. 21-CR-745, 2024 WL 308460, at *2 (N.D. Ill. Jan. 26, 2024); *United States v. Kelley*, No. 23-CR-267, 2024 WL 264588, at *1 (D. Minn. Jan. 24, 2024); *United States v. Wilson*, No. 2:23-CR-20081, 2023 WL 8288989, at *5 (W.D. Tenn. Nov. 7, 2023); *United States v. Delafose*, No. 2:23- CR-185, 2023 WL 7368239, at *1-2 (W.D. La. Nov. 7, 2023); *United States v. Sturgeon*, No. 23-CR-6, 2023 WL 6961618, at *3 (E.D. Ky. Oct. 20, 2023); *United States v. Smith*, No. 23-CR-28, 2023 WL 6880423, at *1-2 (E.D. Ky. Oct. 18, 2023); *United States v. Lane*, 689 F. Supp. 3d 232, 249-53 (E.D. Va. 2023); *United States v. Kittson*, No. 3:21-CR-75, 2023 WL 5015812, at *2-3 (D. Or. Aug. 7, 2023); *United States v. Cooperman*, No. 22-CR-146, 2023

*v. Morgan*, No. 23-10047, 2024 WL 3890184 (D. Kan. Aug. 21, 2024), he fails to note that that ruling has been appealed and is currently pending before the Tenth Circuit (10th Cir. No. 24-3141). Those two dozen courts have reached the correct conclusion; § 922(o) is constitutional. This Court should affirm the district court's ruling here because Sixth Circuit precedent confirming the statute's constitutionality has not been displaced by *Bruen*. Further, if the *Bruen* test is applied, § 922(o) should be upheld at either step because possessing a machinegun as a private citizen is not an activity within the protection of the Second Amendment and, in any event, regulating machineguns in the manner of § 922(o) is consistent with this Nation's history and tradition of firearm regulation.

I.  Section 922(o) does not violate the Second Amendment on its face.

   A.  Standard of Review

   This Court reviews a district court's decisions regarding a statute's constitutionality *de novo*. *United States v. Gore*, 118 F.4th 808, 811 (6th Cir. 2024). A facial challenge is the "most difficult challenge to mount successfully" because it requires that a defendant to "establish that no set of circumstances exists

---

WL 4762710, at *2-3 (N.D. Ill. July 26, 2023); *Cox v. United States*, No. 11-CR-22, 2023 WL 4203261, at *7-8 (D. Alaska June 27, 2023); *United States v. Dixon*, No. 22-CR140, 2023 WL 2664076, at *2-5 (N.D. Ill. Mar. 28, 2023); *United States v. Simien*, 655 F. Supp. 3d 540, 552-53 (W.D. Tex. 2023).

under which the Act would be valid." *United States v. Williams*, 113 F.4th 637, 643 (6th Cir. 2024) (quoting *United States v. Rahimi*, 602 U.S. 680, 693 (2024)). A facial challenge therefore fails if it the statute "is constitutional in even just one of its applications." *Id.*

B. Statutory background

Subject to two narrow exceptions, § 922(o) makes it "unlawful for any person to transfer or possess a machinegun." 18 U.S.C. § 922(o)(1). The first exception is for machineguns transferred or possessed by government entities. 18 U.S.C. § 922(o)(2)(A). The second is for machineguns that were lawfully possessed before the statute's effective date in 1986. 18 U.S.C. § 922(o)(2)(B).

A machinegun is "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b); *see* 18 U.S.C. § 921(a)(24) (incorporating definition from Title 26). The term also includes "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." 26 U.S.C. § 5845(b).

C.  Supreme Court authority

Bridges argues that § 922(o) is unconstitutional on its face because it infringes on his right to keep and bear arms under the Second Amendment, which provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  However, "[l]ike most rights, the right secured by the Second Amendment is not unlimited.  From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was *not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose*."  *Heller*, 554 U.S. at 626 (emphasis added).  In *Heller*, the Supreme Court held that the Second Amendment is a product of "an interest balancing by the people" and protects the "right of law-abiding, responsible citizens to use arms in defense of hearth and home."  *Id.* at 635.  The Court further explained that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill."  *Id*. at 626.  In fact, such regulations are "permissible."  *Id*.

In *Bruen*, 597 U.S. at 10, the Supreme Court recognized that ordinary, law-abiding citizens have a right to carry handguns for self-defense outside the home.

It held that a New York law requiring residents to show "proper cause" to obtain a license to carry outside the home violated that right. *Id*. at 24.

*Bruen* set forth a two-step test for evaluating the constitutionality of a firearm regulation. As explained in *Bruen*, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id*. at 17. Thus, at the first step, "the government may justify its regulation" by showing that the challenged law "regulates activity falling outside the scope of the right as originally understood." *Id.* at 18 (internal quotation marks and citations omitted). If the regulated activity is outside the Second Amendment's scope, the regulation is constitutional and the inquiry ends there. *Id.*

On the other hand, if a statute regulates conduct protected by the Second Amendment, the analysis moves to the second step, in which "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*. This second-step analysis involves "considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 602 U.S. at 692. The challenged regulation need only be "'relevantly similar' to laws that our tradition is understood to permit," and "[w]hy and how the regulations burden the right are central to this inquiry." *Id*. (quoting *Bruen*, 597 U.S. at 29). "[W]hen a challenged

19

regulation does not precisely match its historical precursors, 'it still may be analogous enough to pass constitutional muster.'" *Id.* (quoting *Bruen*, 597 U.S. at 30). Thus, "the Second Amendment permits more than just gun regulations identical to those existing in 1791." *Id.*

        D.      Supreme Court and Sixth Circuit precedent foreclose Bridges' constitutional challenge.

Supreme Court and Sixth Circuit precedent foreclose Bridges' challenge to the constitutionality of § 922(o). The Supreme Court in *Heller* considered it uncontroversial that "M-16 rifles and the like—may be banned" and stated that it would be "startling" to think that "the National Firearms Act's restrictions on machineguns . . . might be unconstitutional." *Heller*, 554 U.S at 624, 627. Later, this Court rejected a constitutional challenge to § 922(o) as "directly foreclosed by" *Heller*. *Hamblen v. United States*, 591 F.3d 471, 474 (6th Cir. 2009). The *Hamblen* Court explained that machineguns fall outside of Second Amendment protection because they are not typically possessed by law-abiding citizens for lawful purposes. *Id*. "[W]hatever the individual right to keep and bear arms might entail, it does not authorize an unlicensed individual to possess unregistered machine guns for personal use." *Id*. Thus, the Sixth Circuit held that the Second Amendment "does not authorize an unlicensed individual to possess unregistered machine guns for personal use." *Id.*

*Hamblen*'s rejection of the argument that § 922(o) violates defendants' Second Amendment rights is binding unless and until this Court en banc or the Supreme Court overrules it. *United States v. Ferguson*, 868 F.3d 514, 515 (6th Cir. 2017) ("One panel of this court may not overrule the decision of another panel; only the en banc court or the United States Supreme Court may overrule the prior panel."). Thus, Bridges' challenge is directly foreclosed by *Heller* and *Hamblen*.

Bridges argues that reliance on pre-*Bruen* Sixth Circuit precedent such as *Hamblen* is incorrect because it relied on means-end analysis. (Appellant Br. 31). However, *Bruen* did not address the *type* of firearms protected by the Second Amendment, and it casts doubt only on cases that applied means-end scrutiny after determining that the conduct at issue fell within the meaning of the Second Amendment. *See Bruen*, 597 U.S. at 19 (holding that "means-end scrutiny" in the Second Amendment context is inappropriate and "one step too many"). Neither *Heller* nor *Hamblen* (which does discuss the types of firearm protected by the Second Amendment) applied the means-end scrutiny that *Bruen* repudiated.

Indeed, nothing in *Bruen* casts doubt on the analysis in *Hamblen* or *Heller*— *Bruen*'s analysis was "[i]n keeping with" and "broadly consistent with *Heller*." *Bruen*, 597 U.S. at 17, 19. *Bruen* cited and reaffirmed the Supreme Court's

21

recognition in *Heller* (which this Court relied upon in *Hamblen*), that "dangerous and unusual weapons" are excluded from Second Amendment protection. *Bruen*, 597 U.S. at 21 (referring to "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons'") (citation omitted); *id.* at 47 (noting that "colonial legislatures sometimes prohibited the carrying of 'dangerous and unusual weapons'—a fact we already acknowledged in *Heller*") (citation omitted). Similarly, in *Rahimi*, the Supreme Court noted that *Heller* stated "that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" *Rahimi*, 602 U.S. at 699 (quoting *Heller*, 554 U. S. at 626, 627 n.26).

Other circuits have continued to apply *Heller*'s machinegun analysis after *Bruen*. *See Bevis v. City of Naperville, Illinois*, 85 F.4th 1175, 1195 (7th Cir. 2023) ("*Heller* itself stated that M16s are not among the Arms covered by the Second Amendment; they are instead a military weapon."), *Bianchi v. Brown*, 111 F.4th 438, 445, 459, 470 (4th Cir. 2024) (en banc) (citing *Heller* in holding that military-style "assault weapons" were not within the scope of the Second Amendment right).

Bridges argues only that *Hamblen* is of "diminished force" since *Bruen*, but he does not provide any other reason why *Hamblen* is distinguishable from this

case such that this Court should disregard this binding precedent. Put simply, nothing since *Heller* and *Hamblen* casts doubt on either case's machinegun analysis, and *Bruen* did not disturb the applicability of these cases to this one. *Heller* and *Hamblen* thus remain binding and Bridges' Second Amendment challenge fails on that basis alone.

      E.      Section § 922(o) is constitutional under the *Bruen* test.

Even if *Heller* and *Hamblen* could be disregarded, § 922(o) is constitutional under *Bruen* for two reasons. First, a machinegun is not a type of weapon the Second Amendment protects, such that Bridges' challenge fails at *Bruen*'s first step. Second, regardless, regulating machinegun possession is consistent with this nation's historical tradition of regulating dangerous and unusual weapons.

      1.      Machineguns are not arms protected by the Second Amendment.

When considering whether a firearm regulation is constitutional, the appropriate test is based on "the Second Amendment's text, as informed by history." *Bruen*, 597 U.S. at 19. The right guaranteed by the Second Amendment is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626. Instead, "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *Id*. at 625.

In reaching this conclusion, the Supreme Court in *Heller* looked to the entirety of the Second Amendment's text and the role of militias. The purpose of the Second Amendment is stated in its preface: "A well regulated Militia, being necessary to the security of a free State…"—and its operative clause, the protection of "the right of the people to keep and bear Arms," exists in furtherance of that purpose. *Heller*, 554 U.S. at 625. The Second Amendment defines the weapons covered by this right as weapons that "'men were expected to . . . bear []'" when "'called for [militia] service,'"—meaning weapons "'in common use at the time' for lawful purposes like self-defense." *Id*. at 624 (quoting *United States v. Miller*, 307 U.S. 174, 179 (1939) (holding that the Second Amendment does not guarantee the right to possess a shotgun with a barrel less than 18 inches in length where no reasonable relationship exists between possession of that instrument with the preservation of a well-regulated militia); *Friedman v. City of Highland Park*, 784 F.3d 406, 408 (7th Cir. 2015) ("[T]he Second Amendment does not authorize private persons to possess weapons such as machine guns and sawed-off shotguns that the government would not expect (or allow) citizens to bring with them when the militia is called to service.").

Machineguns are not typically possessed by law-abiding citizens for lawful purposes. "The machine gun was first widely used during World War I, where it

'demonstrated its murderously effective firepower over and over again.'" *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) (quoting William Rosenau, Book Note, The Origins of the First Modern Weapon, TECH. REV., Jan. 1987, at 74 (reviewing John Ellis, The Social History of the Machine Gun (1986))). Machineguns such as the M-16 are standard issue automatic firearms for the military. *Bianchi,* 111 F.4th at 454 (describing the development of the M-16). Within that context, Congress has considered machineguns to be "primarily weapons of war." S. Rep. No. 90-1501, at 28 (1968); *see Hollis v. Lynch*, 827 F.3d 436, 448-50 (5th Cir. 2016) (same).

However, following World War I, machineguns "became popular during the interwar period 'with criminals, especially bootleggers.'" *Bianchi*, 111 F.4th at 454 (quoting David B. Kopel & Joseph G. S. Greenlee, The History of Bans on Types of Arms Before 1900, 50 J. Legis. 223, 287 n.490 (2024)); *see also* Robert J. Spitzer, Understanding Gun Law History After *Bruen*: Moving Forward by Looking Back, 51 Fordham Urb. L.J. 57, 63 (2023). At the same time, machineguns were unpopular with civilians and law enforcement. *See Bianchi*, 111 F.4th at 469 ("The Tommy gun was marketed to civilians and police forces with little success, in part due to its expense and lack of controllability." (citing

Spitzer, Understanding Gun Law History After *Bruen*: Moving Forward by Looking Back, 51 Fordham Urb. L.J. at 61-62)).

In response, Congress recognized that "there is no reason why anyone except a law officer should have a machine gun." S. Rep. No. 73-1444, at 2 (1934). The machinegun ban is "designed to deal with crime guns." 132 Cong. Rec. 9600 (1986) (Sen. Hatch). Machineguns are used by "law violator[s]," S. Rep. No. 73-1444, at 1 (1934); they are "used readily and efficiently by criminals or gangsters," H.R. Rep. No. 83-1337, at A395 (1954); they are "used by racketeers and drug traffickers for intimidation, murder and protection of drugs and the proceeds of crime," H.R. Rep. No. 99-495, at 4 (1986); and their "proliferation" undermines "protection of law enforcement officers," *id.* at 7. Just because a weapon may be standard issue in the military doesn't mean it may be lawfully owned by private citizens. *See e.g. Hollis*, 827 F.3d at 447 (citing *Staples v. United States*, 511 U.S. 600, 608-12 (1994), rejecting the theory that equipment ordinarily used in the military is protected by the Second Amendment).

Courts came to a similar conclusion. In finding it "startling" that restrictions on machineguns could be deemed unconstitutional, the Supreme Court in *Heller* discussed *Miller's* "ordinary military equipment" language and concluded that the text of the Second Amendment contemplates the sort of weapons that able-bodied

men called for militia would supply "by themselves and of the kind in common use at the time." *Heller*, 554 U.S. at 624 (quoting *Miller*, 307 U.S. at 179). The Fourth Circuit, post-*Bruen*, has recognized that machineguns are "not in common use for a lawful purpose." *See United States v. Saleem*, No. 23-4693, 2024 WL 5084523, at *1 (4th Cir. Dec. 12, 2024) (per curiam) (quoting *United States v. Price*, 111 F.4th 392, 403 (4th Cir. 2024)).

Machineguns are "likely to be used for criminal purposes." *United States v. Thompson/Ctr. Arms Co*., 504 U.S. 505, 517 (1992) (plurality). Machineguns are "quasi-suspect" weapons that generally fall "outside those categories [of weapons that have] traditionally . . . been widely accepted as lawful possessions." *Staples*, 511 U.S. at 611-12. The law reflects that reality: machineguns are banned or regulated under federal law for private persons under § 922(o), and in 32 states

along with the District of Columbia.[2]  Thirteen other states regulate the possession or usage of machineguns in some way, including prohibiting machinegun conversion devices, limiting the ways and locations where machineguns may be used, or who may possess them.[3]

Since *Heller*, multiple courts of appeals have upheld § 922(o) on the basis that "[m]achine guns are not in common use by law-abiding citizens for lawful

---

[2] Alaska Stat. § 11.61.200; Ariz Rev Stat 13-3102; Cal. Penal Code § 32625(b); Colo. Rev. Stat. § 18-12-102(1); Del. Code Ann. tit. 11, § 1444(a); D.C. Code Ann. § 7-2502.02(a)(2); Georgia Code 16-11-122; Haw. Rev. Stat. §134-8(a); 720 Ill. Comp. Stat. 5/24-1(a)(7)(i); Indiana Code 35-47-5-8; Iowa Code §§ 724.1(7), 724.3; Kan. Stat. Ann. § 21-6301; La. Rev. Stat. § 1752; Me. Stat., 17-A §§ 1051-1052; Mass. Gen. Laws ch. 140, § 123; Minn. Stat. § 609.67; Mo. Rev. Stat. § 571.020.1; Neb. Rev. Stat. § 28-1203(1); Nev. Rev. Stat. Ann. § 202.350(1)(b); N.J. Stat Ann. § 2C:39-5a; N.Y. Penal Law §§ 265.02(2) and (3); N.C. Gen. Stat. § 14-409(b); N.D. Cent. Code § 62.1-05-01; Or. Rev. Stat. § 166.272; 18 Pa. Cons. Stat. Ann. § 908(a), (b)(1); R.I. Gen. Laws § 11-47-8(a); S.C. Code Ann. §§ 16-23-230; S.D. Codified Laws § 22-14-6; Tenn. Code Ann. § 39-17-1302; Tex. Penal Code § 46.05(a)(2); Wash. Rev. Code Ann. § 9.41.190(1); W. Va. Code § 61-7-9; Wis. Stat. § 941.26(1)(a).

purposes." *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008); *see United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame*, 822 F.3d 136, 142 (3d Cir. 2016) (machineguns are "not in common use for lawful purposes"); *Hollis*, 827 F.3d at 451 ("Machineguns are dangerous and unusual and therefore not in common use."); *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) ("[a] machine gun is 'unsusual;" and "[o]utside of a few government-related uses, machine guns largely exist on the black market"); *Hamblen*, 591 F.3d at 474; *United States v. Zaleski*, 489 F. App'x 474, 475 (2d Cir. 2012) (unpublished). Those holdings are correct. Because machineguns were developed for military use and not typically used for lawful purposes, they are not bearable arms within the meaning of the Second Amendment.

---

[3] Ark. Code Ann. § 5-73-204 (prohibiting use for offensive purpose); Conn. Gen. Stat. § 53-202 (prohibiting use for offensive purpose); Fla. Stat. §§ 790.221 (prohibiting readily operable machinegun); Idaho Code Ann. § 18-3302F (prohibiting possession by minor); Md. Code Ann., Crim Law § 4-305.1 (prohibiting machinegun conversion devices); Mich. Comp. Laws Serv. 750.224e (prohibiting machinegun conversion devices); Miss. Code § 97-37-39 (prohibiting machinegun conversion devices); Mont. Code Ann. § 45-8-304 (prohibiting use for offensive purpose); Ohio Rev. Code § 2923.17 (requiring permit); Okla. Stat. Ann. tit. 21, § 1283(A) (prohibiting possession by prohibited persons); Utah Code Ann. § 76-10-509.4 (prohibiting possession by persons under 18); Va. Code Ann. § 18.2-293.1 (requiring registration, prohibiting use for offensive purpose); Wyo. Stat. § 23-3-112(a) (prohibiting use in state game fields and forests).

2.  Section 922(o) falls squarely within this Nation's historical regulation of weapons.

Even if machineguns were bearable arms within the meaning of the Second Amendment, Congress's restriction on machinegun possession is consistent with a longstanding tradition of regulating and restricting dangerous and unusual weapons. *Heller*, citing numerous legal treatises and cases, recognized "the historical tradition of prohibiting the carrying of dangerous and unusual weapons." 554 U.S. at 627 (internal quotation marks omitted). That tradition supported the limitation in *Miller* and *Heller* that the Second Amendment thus protects "the sorts of weapons . . . in common use at the time." *Id*. (internal quotation marks omitted).

Bridges argues that machineguns are in common use today for the purpose of self-defense. (Appellant Br. at 26). To the contrary, machineguns are not only uncommonly owned but also highly dangerous. "Short of bombs, missiles, and biochemical agents, we can conceive of few weapons that are more dangerous than machine guns." *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012). To the government's knowledge, every court to address this question has reached that same conclusion. *See United States v. Berger*, 715 F. Supp. 3d 676, 686 (E.D. Pa. 2024) (collecting cases) ("[T]he Second Amendment does not protect machineguns because they are not in common use for lawful purposes such as self-defense, as

30

recognized by the Third Circuit Court of Appeals and all other circuit courts of appeals which have addressed the issue.").

The dangerousness of machineguns is apparent and well recognized. Machineguns fire at rates significantly higher than other still-dangerous weapons, including semi-automatic firearms. *See Bevis*, 85 F.4th at 1196 ("The M16 has an automatic firing rate of 700 rounds per minute, while the AR-15 has a semiautomatic rate of 'only' 300 rounds per minute."). Congress understood that machineguns are a "law violator['s] . . . most dangerous weapon." S. Rep. No. 73-1444, at 1 (1934). The Supreme Court has also noted "the immense danger posed by machineguns." *United States v. O'Brien*, 560 U.S. 218, 230 (2010).

Additionally, machineguns are not in common use. Courts have used different metrics to determine unusualness in this context. *See Hollis*, 827 F.3d at 448-50 (describing various methods that courts have employed, including considering "raw number[s], percentage[s] and proportion[s], and jurisdiction-counting"). These metrics all point to the conclusion that machineguns are not in common use. In his brief, Bridges cites the statistic that there were over 740,000 total registered machineguns in the United States in May 2021. (Appellant Br. at 27). However, that number includes those possessed by law enforcement. With law enforcement equipment excluded, that number falls closer to 175,977 (the

31

number of grandfathered-in lawfully registered machineguns as of February 2016). *See Hollis*, 827 F.3d at 449 (citing ATF statistics); Memorandum Order, *United States v. Greely*, et al, No. 1:22-cr-00137, E.D. Mich., Jun. 1, 2023, p. 7. Setting aside their dangerousness, the number excluding law enforcement and unregistered machineguns is the objectively relevant figure to the inquiry of whether machines guns are weapons "typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625.

That number of registered machineguns, excluding those possessed by law enforcement, is a tiny fraction of the 300 million to 500 million privately-owned firearms in the United States.[4] It pales in comparison even to the number of firearms manufactured and imported into the United States every year, which has exceeded 20 million in recent years.[5] It is far less than the "50 million large-capacity magazines" that the Second Circuit found sufficient to establish common use." *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 255 (2d Cir. 2015). As noted above, the machinegun was developed for and has been used

---

[4] *See, e.g.*, The Trace, *How Many Guns are Circulating in the U.S.?*, https://www.thetrace.org/2023/03/guns-america-data-atf-total/ (estimate of 494 million); John Berrigan, et al., *The Number and Type of Private Firearms in the United States*, Annals of the American Academy of Political and Social Science, Vol. 704, Issue 1, at 82 (Nov. 2022) (estimate of 326 million in 2019).

in warfare by the military. Under that analysis, § 922(o) fits this nation's legal tradition of regulating the possession of dangerous and unusual weapons.

Further, § 922(o)'s prohibition of possession does not render it dissimilar to this nation's "historical tradition of prohibiting the carrying of dangerous and unusual weapons." *Heller*, 554 U.S. at 627. Furthermore, to establish similarity with this nation's historical tradition of regulating dangerous weapons, the Supreme Court's precedents do not require a "dead ringer," an "identical" legal regime, or a "law trapped in amber." *Rahimi*, 144 S. Ct. at 1897-98. Indeed, *Rahimi* applied a similar legal tradition banning "riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land" to the modern-day prohibition on possession of a firearm by a person subject to a protection order in 18 U.S.C. § 922(g)(8). *Id*. at 1901 (alterations omitted).

Moreover, as the district court recognized, *Heller* singled out machineguns as validly restricted under the Second Amendment without regard to how those weapons are used (e.g. possessed, carried, etc.). 554 U.S. at 625; *see also Bruen*, 597 U.S. at 72 (Alito, J. concurring) (explaining that *Bruen* did not "decide anything about the kinds of weapons that people may possess" or "disturb[]

---

5 *See* The Trace, *How Many Guns are Circulating in the U.S.?,* https://www.thetrace.org/2023/03/guns-america-data-atf-total/

anything that we said in Heller . . . about restrictions that may be imposed on the possession or carrying of guns").  Courts have rejected similar arguments to the one Bridges makes, and this Court should, too.  *See, e.g., United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*, 822 F.3d 136, 143 (3d Cir. 2016); *see also Berger,* 715 F. Supp. 3d at 686  (collecting cases).

Section 922(o) is also consistent with a related "strong tradition of regulating excessively dangerous weapons." *Bianchi*, 111 F.4th at 446.  Self-defense is the "central component" of the right to bear arms. *Heller*, 554 U.S. at 599 (emphasis omitted).  The founding generation understood the right to self-defense as the right of "a citizen to 'repe[l] force by force' when 'the intervention of society in his behalf, may be too late to prevent an injury.'" *Id*. at 595 (quoting 1 Blackstone's Commentaries 145-146, n. 42 (1803)).

Firearms at the founding were generally useful for self-defense but due to technical limitations, could not singularly inflict significant or broad damage. *See* Joseph Blocher & Eric Ruben, Originalism-by-Analogy and Second Amendment Adjudication, 133 Yale L.J. 99, 153-54 (2023).  One significant exception was gunpowder, which in large quantities "could kill many people at once if ignited." *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 49 (1st Cir. 2024).  "In

response to this danger—which resulted from the accumulation of firepower disproportionate to the lawful purpose of individual self-defense—a handful of American cities and states restricted the quantity of gunpowder that an individual could possess." *Bianchi*, 111 F.4th at 465 n.3 (collecting laws).

As technology improved and firearms became lethally effective, legislatures throughout the nineteenth century and onward responded by enacting laws regulating weapons thought to offer firepower disproportionate to use in self-defense. *Id*. at 466-70 & n.4 ("Indeed, over the course of the 19th century and into the early 20th century, nearly every single state would either regulate the carry of certain firearms or place severe restrictions on their possession." (collecting laws)). Machineguns followed the same pattern. As machineguns became available in the early twentieth century, their tremendous power to inflict damage disproportionate with any use for self-defense spurred similar regulation. *See id*. at 469.

Historical analogs need only be "relevantly similar" to establish consistency with the historical tradition of regulating dangerous weapons (not "distinctly similar" as Bridges suggests). *See Rahimi*, 144 S. Ct. at 1898, 1901. Even the dissent in Rahimi repeatedly invoked the "relevantly similar" standard, *id*. at 1933, 1938, 1941, despite explicitly concluding that § 922(g)(8) addressed a societal problem "that has persisted since the 18th century," *id*. at 1933 (Thomas, J.,

dissenting) (internal quotation marks omitted). Section 922(o) is consistent with "the principles that underpin our regulatory tradition." *Id.* at 1898. Bridges argues that § 922(o) regulates mere possession, not only the manner in which the dangerous weapon is used (Appellant Br. at 30); however, the above demonstrates that this nation has had a historical tradition of regulating the possession of weapons deemed too dangerous for common use.

Accordingly, even if Bridges' claim could succeed past step one of the *Bruen* analysis, it fails also at step two given the nation's historical tradition of regulating dangerous and unusual weapons.

II.    Bridges' as-applied challenge has been forfeited and lacks merit.

A.    Standard of review

Because Bridges did not sufficiently raise an as-applied challenge to § 922(o) in the district court, he has forfeited his right to full appellate review of that challenge, and this Court reviews it only for plain error. *United States v. Graham*, 622 F.3d 445, 455 and n.9 (6th Cir. 2010).

In his motion to dismiss, Bridges referenced an as-applied challenge to § 922(o) only by saying that if it is "impermissible to sell, and manufacture arms across state lines if one is not a licensed firearm dealer," then Bridges "would only challenge the constitutionality of 922(o) as applied under the guise of possession."

36

Def.'s Motion, R. 24, PageID 34. He did not cite authority. The district court noted that Bridges' motion "failed to develop his argument through meaningful analysis" of how § 922(o) would be unconstitutional as applied to him. Order, R. 36, PageID 56. When arguments are raised only in a cursory or perfunctory manner but without any developed argumentation, such arguments are deemed waived or forfeited. *See United States v. Reed*, 167 F.3d 984, 993 (6th Cir. 1999) (citing *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived")).

To establish plain error, a defendant must show (1) "that an error occurred in the district court," (2) that the error was plain, *i.e.*, obvious or clear," (3) "that the error affected the defendant's substantial rights," and (4) "that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Graham*, 622 F.3d at 455 (quoting *United States v. Blackwell*, 459 F.3d 739, 771 (6th Cir. 2006)).

    B.    Bridges has failed to show error, much less plain error, with respect to the application of § 922(o) to him.

Bridges has not shown that the district court erred in denying his as-applied challenge, and he cannot show plain error here. As set forth above, § 922(o) is a constitutional regulation. There is nothing about Bridges' case that takes it out of

37

the heartland of § 922(o) cases or renders the statute unconstitutional as to him. Indeed, his actions in this case (shooting multiple bullets at a law enforcement officer) underscore the dangerousness of the machinegun he was carrying.

On appeal, Bridges emphasizes that the statute covers "mere possession" of a machinegun without regard to whether or how the possessor uses it. (Appellant Br. at p. 30). That argument is contrary to authority, as the statute has been upheld as written, and it is particularly unavailing here, where Bridges went far beyond "mere possession" and used the machinegun to fire at a person. He also cites this Court's opinion in *Williams*, 113 F.4th at 657, in which Court held that there is a historical tradition of disarming dangerous groups. Bridges then states that he "had no criminal record prior to the underlying incident." (Appellant Br. at p. 31). But this doesn't help him, either; Bridges is plainly a dangerous person, as his actions with the machinegun show, and the "dangerousness" inquiry in *Williams* related to a different statute, 18 U.S.C. § 922(g)(1), which prohibits felons from possessing firearms. Although there is some overlap in the historical support for the two statutes, they are supported by different historical analogs as well.

Finally, a litigant cannot show plain error where the law is unsettled on an issue. For example, in *United States v. Alvarado*, 95 F.4th 1047, 1053 (6th Cir. 2024), this Court addressed a *Bruen*-based challenge to § 922(g)(1) under a plain-

error standard. There was a circuit split regarding the extent of § 922(g)(1)'s constitutionality under *Bruen*, and "[c]ircuit splits . . . generally preclude finding plain error because the split is good evidence that the issue is subject to reasonable dispute." *Id.* (internal quotation marks and citations omitted). The lack of plain error is even clearer here. Where courts have almost unanimously reached the same conclusion (that § 922(o) is unconstitutional), the district court could not have committed plain error in joining the consensus. *See id.* Moreover, the district court's constitutional analysis of the statute was sound and well-reasoned. It is constitutional for the reasons set out in Section I above, and Bridges has not identified anything unique about his circumstances that would lead to a different conclusion when the statute is applied to him.

## CONCLUSION

For the foregoing reasons, this Court should affirm the judgment of the district court.

Respectfully submitted,

REAGAN TAYLOR FONDREN
Acting United States Attorney

/s/ Eileen Kuo
EILEEN KUO
Assistant United States Attorney
167 N. Main St., Ste. 800
Memphis, Tennessee 38103
(901) 544-4231
Eileen.Kuo@usdoj.gov

<u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitation provided in Rule 32(a)(7)(C)(i) of the Federal Rules of Appellate Procedure. The brief contains 7728 words of Times New Roman (14-point) proportional type, from the Statement of Jurisdiction through the Conclusion. Microsoft Word 2016 is the word-processing software that I used to prepare this brief.

/s/ Eileen Kuo
Assistant United States Attorney

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Appellee, pursuant to Sixth Circuit Rules 28(b) & 30(g), hereby designates the following filings in the District Court's record as entries that are relevant to this appeal:

| DESCRIPTION OF ENTRY | DATE | RECORD ENTRY # | PAGE ID # |
|---|---|---|---|
| **W.D. Tenn. No. 2:23-cr-20080-JTF** | | | |
| Indictment | 4/27/2023 | 2 | 2-3 |
| Defendant's Motion to Dismiss | 7/19/2023 | 24 | 29-35 |
| Gov't Response in Opposition | 8/1/2023 | 25 | 36-41 |
| Defendant's Reply | 8/3/2023 | 26 | 42-45 |
| Order Denying Defendant's Motion | 2/6/2024 | 34 | 48-56 |
| Presentence Investigation Report | 7/1/2024 | 49 | 95-115 |
| Amended Judgment | 9/24/2024 | 65 | 156-161 |
| Notice of Appeal | 9/24/2024 | 67 | 163 |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Brief for Plaintiff-Appellee United States was served upon counsel for Defendant, by filing with the Court's CM/ECF system this date: December 27, 2024.

/s/ Eileen Kuo
Assistant United States Attorney